**EXPRESSWAY DODGE, INC.,**
**Appellant–Defendant,**

v.

**Richard McFARLAND,**
**Appellee–Plaintiff.**

No. 93A02–0111–EX–762.

Court of Appeals of Indiana.

April 9, 2002.

Michael V. Gooch, Harrison & Moberly, LLP, Carmel, Indiana, Attorney for Appellant.

Steven K. Hahn, Ziemer, Stayman, Weitzel & Shoulders, LLP, Evansville, Indiana, Attorney for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Expressway Dodge, Inc. (Expressway) challenges the determination of the Worker's Compensation Board of Indiana (the Board) that Richard McFarland was Expressway's "employee" under the Indiana

Worker's Compensation Act (the Act).[1] Specifically, Expressway asserts that McFarland was acting as an independent contractor when he was injured while driving a vehicle for the company. Because we find sufficient indicia of employee status to support the Board's decision, we affirm.

### Facts and Procedural History

Expressway is a dealership in the business of buying and selling new and used vehicles. The company utilized McFarland and several other retirees to drive vehicles to and from auctions and other sites. McFarland had shuttled vehicles and accompanying paperwork for Expressway since 1991.

Typically, Expressway would call McFarland for an assignment, which he was free to accept or reject. If he accepted, McFarland often began and ended his day at Expressway, which provided a driver to transport him to pick-up sites and from drop-off sites. When McFarland drove a vehicle for Expressway, he wore clothing bearing the Expressway logo. Expressway did not dictate the speed and manner of McFarland's driving. While Expressway did not designate routes, the company paid McFarland's mileage based on the most direct course, expecting that he would not place excessive miles on the cars and trucks. Expressway also provided insurance and dealer plates, and it paid for gasoline, meals, and occasional lodging associated with the trips.

On December 15, 1998, while driving a vehicle to an auction for Expressway, McFarland was seriously injured in a one-car accident. At that time, he was working exclusively for Expressway. McFarland applied for worker's compensation benefits. After his death, his personal representative was substituted as plaintiff in the action.

At some point, an issue arose regarding whether McFarland had been Expressway's employee, so as to bring him under the Act's coverage, or whether he had acted as an independent contractor. That question was submitted at a hearing before a single member of the Board. Based upon the parties' stipulated facts,[2] the Board member examined seven factors and decided that McFarland was an employee. With one dissent, the full Board adopted that decision. This appeal followed.

### Discussion and Decision

The sole issue is whether, at the time of his injury, McFarland was acting as an employee of Expressway or as an independent contractor. The question of whether a worker is an employee or an independent contractor can be one of mixed law and fact. *Meredith v. N. Ind. Co-op. Ass'n*, 126 Ind.App. 558, 562, 132 N.E.2d 267, 269 (1956) (citing BEN F. SMALL, WORKMEN'S COMPENSATION LAW OF INDIANA, § 4.2, p. 65 (1950)). If the evidence is undisputed and reasonably susceptible to but one inference, the question is one of law. *Id.; see also Grand Lodge Free & Accepted Masons v. Jones*, 590 N.E.2d 653, 654 (Ind.Ct.App.1992) (stating that the Board's decision is contrary to law when the evidence is without conflict and all reasonable inferences to be drawn therefrom lead to but one conclusion and the Board has reached a different one). "However, if the evidence is conflicting, or lends itself to different deductions, then it is a question of fact." *Meredith*, 126 Ind.

---

1. Ind.Code §§ 22–3–1–1 to –12–5.

2. The single Board member conducted a supplementary hearing but did not enter additional facts based upon the evidence presented.

App. at 562, 132 N.E.2d at 269 (quoting SMALL, *supra*, § 4.2, p. 65). This court gives substantial deference to the Board's factual determinations. *See Grand Lodge*, 590 N.E.2d at 654. Further, "we construe the Act and resolve doubts in the application of terms in favor of the employee so as to effectuate the Act's humanitarian purpose to provide injured workers with an expeditious and adequate remedy." *Walker v. State*, 694 N.E.2d 258, 266 (Ind. 1998).

In this case, the parties disagree on the applicable test to be used in deciding whether McFarland was an employee or an independent contractor. Expressway discusses in detail the seven-factor test utilized by the Board. That test was recently applied in *GKN Co. v. Magness*, 744 N.E.2d 397 (Ind.2001) to determine whether a person was an employee of two separate employers. The non-exclusive factors that were weighed and balanced are as follows: "(1) right to discharge; (2) mode of payment; (3) supplying tools or equipment; (4) belief of the parties in the existence of an employer-employee relationship; (5) control over the means used in the results reached; (6) length of employment; and, (7) establishment of the work boundaries." *Id.* at 402.

■ McFarland urges that the seven-factor test is inappropriate here where the issue is employee versus independent contractor status. He relies upon *Moberly v. Day*, 757 N.E.2d 1007 (Ind.2001), where our supreme court distinguished an employee from an independent contractor by evaluating the following factors:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

*Id.* at 1010 (quoting RESTATEMENT (SECOND) OF AGENCY § 220(2) (1958)). The *Moberly* court recognized the similarity between the seven-factor test used in *GKN* and the ten-factor Restatement test, but it rejected application of the former, stating, "We think that each list of factors works slightly better when applied only for the purpose for which it was developed." *Id.* at 1010 n. 3; *see also* ARTHUR LARSON & LEX K. LARSON, 3 LARSON'S WORKERS' COMPENSATION LAW, § 60.01, at 60–2 (2001) (citing ten Restatement factors as representing "[a] typical definition and summary of tests" used to differentiate employee from independent contractor).

Expressway observes that the employee versus independent contractor issue in *Moberly* involved the scope of vicarious tort liability rather than an application for worker's compensation and, thus, suggests that the Restatement test is inappropriate.

As a leading treatise indicates, the worker's compensation concept of "employee" may differ from the common-law concept of "employee" or "servant." *See* LARSON, *supra,* §§ 60.04, 64.01. In addition, in the worker's compensation context, our legislature has provided a definition of "employee," namely, "every person, including a minor, in the service of another, under any contract of hire or apprenticeship, written or implied, except one whose employment is both casual and not in the usual course of the trade, business, occupation, or profession of the employer." Ind.Code § 22–3–6–1(b); *Hale v. Kemp,* 579 N.E.2d 63, 66 (Ind.1991); *see also* Ind.Code § 22–3–7–9(b). Mindful of these differences, we nevertheless believe that the Restatement test is applicable in the worker's compensation context. Thus, we now decide whether McFarland as an employee for purposes of the Act under the Restatement test described in *Moberly.*[3]

a. *Extent of Control over Details.* The stipulated facts do not indicate the extent of Expressway's *right* to control McFarland. *See Dague v. Fort Wayne Newspapers, Inc.,* 647 N.E.2d 1138, 1140 (Ind.Ct. App.1995) (emphasizing that it is the right to direct and control, not necessarily the exercise of control, that is significant), *trans. denied.* In practice, Expressway told McFarland where to report, what vehicles and paperwork to pick up or deliver, and what destinations were involved. The company, however, did not directly indicate "the route to take, when to leave or return, [or] the speed or manner to drive." Appellant's App. p. 6. Expressway argues that the lack of control over the details of the work "describes a classic case of an independent contractor . . . ." Reply Br. p. 4.

In support of its position, Expressway directs us to *GKN,* where Starnes Trucking, Inc. contracted with GKN, a general contractor, to haul materials to and from GKN's batch plant, a facility where concrete was formed. Starnes hired Larry Magness to haul concrete from that plant to various highway construction sites. Magness was injured when a retaining wall at the site collapsed as he was refueling. He collected worker's compensation from Starnes and sued GKN, claiming negligence in the construction and maintenance of the wall. GKN moved to dismiss, arguing that Magness's exclusive remedy rested with the Worker's Compensation Act. The trial court denied the motion.

On appeal, our supreme court stated that "the right to control the manner and means by which the work is to be accomplished is the single most important factor in determining the existence of an employer-employee relationship." *GKN,* 744 N.E.2d at 403. In concluding that the control factor weighed against employee status, the supreme court referenced the contract between GKN and Starnes, which provided that "the Subcontractor [Starnes] has sole control over the means and methods by which his work is to be done . . . ." *Id.* at 406. The supreme court also observed that GKN did not meet with Magness to discuss how to maneuver his truck or pour the concrete. *Id.* The only direction GKN gave Magness was giving him a "ticket" for each load of concrete hauled, informing him where to take each load, giving him a "cut-off sign" at the end of the day, and telling him when to return the next morning. *Id.* At times, the State inspector rather than GKN gave Magness the ticket and directions.

*GKN* is distinguishable. Here, there is no contract assigning the right to control

---

**3.** Neither the single Board member nor the full Board had the benefit of *Moberly* when deciding this case, as *Moberly* was decided after the Board had entered its order.

and, as Expressway dealt directly with McFarland, no other employer. Further, it is of little consequence that Expressway did not dictate the speed and manner of McFarland's driving because those aspects are often governed by external conditions rather than by the needs of a general contractor. *See Dallas Moser Transporters, Inc. v. Ensign*, 594 N.E.2d 454, 457 (Ind.Ct.App.1992) (opining, "[W]here the work to be performed is that of driving a vehicle, the question of control over the details of the work performed is not dispositive of the ultimate issue of whether the driver was an employee or an independent contractor."), *reh'g denied.*

Finally, McFarland had driven for Expressway since 1991. Although the company did not specify routes, the parties stipulated that the drivers knew the best, most direct routes. Thus, experienced drivers did not require much information beyond identification of the vehicle and destination. Under these facts, the company's lack of control may be explained, in part, by McFarland's competence and experience. *See* LARSON, *supra*, § 61.05. In this case, the failure to control work details is not determinative. *See Mortgage Consultants, Inc. v. Mahaney*, 655 N.E.2d 493, 496 (Ind.1995) (observing that, under the Restatement test, all factors must be assessed and no factor is dispositive).

b. *Occupation or Business of One Employed.* McFarland was not engaged in a separate business. In 1997, he had also driven part-time for another business, but in 1998, the year of the accident, he worked exclusively for Expressway. This evidence is more consistent with employee rather than independent contractor status.

c. *Kind of Occupation.* The facts are silent regarding whether, in the locality, shuttling vehicles was the type of work performed under the direction of an employer. Because the facts shed no light on the matter, we assign this factor no weight.

d. *Skill Required.* The parties stipulated that McFarland's work required no specialized skill. Unskilled labor is typically performed by employees, rather than by independent contractors. *See* RESTATEMENT (SECOND) OF AGENCY, § 220(2), cmt. i; *cf. Ruffi v. Am. Fly Away Serv.*, 104 N.E.2d 37 (Ohio Ct.App.1950) (finding independent contractor status where skilled pilot shuttled planes under contract designating him as independent contractor "responsible for his own acts"). This factor weighs in favor of employee status.

e. *Supplier of Equipment, Tools, and Work Location.* McFarland supplied only his driving ability. Expressway provided insurance, dealer plates, and fuel for the vehicles. The company also gave McFarland clothing bearing the Expressway logo, clothing that McFarland wore while shuttling vehicles for the company. McFarland often started and ended his workdays at Expressway, as the company transported him to pickup sites and from delivery sites. These facts implicate an employer-employee relationship.

f. *Length of Employment.* McFarland had worked for Expressway since 1991, indicating a long-term relationship. Although Expressway had the right to fire McFarland by simply refusing to call him for an assignment, it was understood that McFarland would continue to work indefinitely, as long as he performed adequately and exhibited a willingness to work. These facts favor a finding of employee status. However, McFarland could accept or reject a job. In the fifty-two weeks prior to his accident, he had received about twelve paychecks totaling $2,616.07. This non-continuous service is more typical of independent contractor status. *See Moberly*, 757 N.E.2d at 1012 (deciding that, where person worked for another over a

period of four to five years but had irregular hours and non-continuous service, factor pointed toward independent contractor status). Because the underlying facts cut in both directions, we accord this factor little weight.

g. *Method of Payment.* Expressway paid McFarland per job, on the basis of mileage, and reimbursed McFarland for expenses related to meals and lodging. The company did not withhold federal or state income taxes, and it provided McFarland with Federal Income Tax Forms 1099, characterizing the income as "nonemployee compensation." Appellant's App. p. 6. The parties agree that the method of payment is characteristic of independent contractorship.

h. *Regular Business of Employer.* Expressway is an auto dealership, in the business of purchasing and selling motor vehicles. McFarland delivered vehicles to sites so they could be sold; he picked up vehicles that Expressway had purchased and brought them to the dealership. That work was an integral part of Expressway's business operations, and McFarland's injuries occurred while performing that work. *Cf. Carter v. Ward Body Works, Inc.*, 246 Ark. 515, 439 S.W.2d 286 (1969) (finding no employee status where accident occurred after drivers had delivered buses and then spent personal days visiting friends). Indeed, the parties agree that the shuttle operations were performed in the course of the company's regular business. The foregoing suggests that McFarland was an employee.[4]

i. *Belief of Parties.* The owner of Expressway believed that McFarland was an employee and, apparently, McFarland also considered himself an employee. Under the Restatement, subjective belief is "not determinative ... except insofar as such belief indicates an assumption of control by the one and submission to control by the other." RESTATEMENT (SECOND) OF AGENCY, § 220(2) cmt. m. Thus, while not "determinative," the factor slightly favors McFarland.

j. *Whether the Principal is in Business.* Expressway is in the business of selling vehicles, weighing in favor of the Board's finding. *See Moberly*, 757 N.E.2d at 1013.

■ In summary, Expressway did not control the work details but, given the nature of the work and McFarland's experience, the need for supervision was minimal. Although he worked intermittently, McFarland had shuttled vehicles for Expressway for a number of years. McFarland had no special skills and no separate business. He worked in the course of Expressway's regular business, and the company provided instrumentalities for that work. Expressway paid McFarland by the job and did not withhold income for federal and state tax purposes; nevertheless, the parties believed McFarland was an employee. Based upon the Board's factual findings, and applying the proper ten-factor Restatement test, we conclude that McFarland acted as an employee of Expressway at the time he was injured. That conclusion comports with the statutory definition of "employee" and with the policy underlying the Act. Accordingly, we affirm the Board's decision.

Affirmed.

BARNES, J., concurs.

FRIEDLANDER, J., dissents with separate opinion.

---

**4.** Larson submits that, in the worker's compensation context, the nature of the claimant's work in relation to the regular business of the employer is the most relevant factor. LARSON, *supra*, § 60.05. *See also* I.C. § 22–3–6–1(b) (excluding those whose employment is both casual and not in the usual course of the employer's business).

FRIEDLANDER, Judge, dissenting.

I disagree with the majority's conclusion that McFarland was an employee of Expressway Dodge and therefore respectfully dissent from the decision to affirm the Worker's Compensation Board's determination.

I note at the outset that I agree entirely with the majority's discussion of the law applicable to this case. In particular, I agree that we should resort to the Restatement test in order to determine whether McFarland was an employee or an independent contractor. In my view, however, the outcome in this case is the same regardless of which test is applied: McFarland was not an employee. Therefore, my departure with my colleagues lay not in which test should be applied, but in the proper balancing of the factors set out in that test.

In reaching the conclusion that McFarland was an independent contractor, I am mindful that our supreme court has indicated that the factors to be considered do not represent a mathematical formula wherein factors cutting one way are measured against those cutting the other way. *GKN Co. v. Magness*, 744 N.E.2d 397 (Ind. 2001). Rather, the factors "must be weighed against each other as a part of a balancing test" and are not to be regarded as "a mathematical formula where the majority wins." *Id.* at 402. The court also indicated that when applying this evaluative method, we should give the greatest weight to the right of the employer to exercise control over the employee. *Id.*

Looking first at the factors other than control, I do not perceive a balance that would weigh in favor of a determination that McFarland was an employee. Therefore, the matter of control over the work, already identified as the single most important consideration by our supreme court, takes on even more importance in

this case. The facts relevant to control reveal that Expressway occasionally contacted McFarland when it needed to move a vehicle from one location to another. Although perhaps not entirely relevant to the issue of control, I note that McFarland was always free to decline the offer and would have suffered no adverse consequences if he chose to do so. In any event, after he accepted a job, McFarland was instructed only to take the vehicle from one place to another. He was not told the manner in which to drive, the route to take, or even when he should leave. The largely unfettered discretion enjoyed by McFarland in these control aspects of his relationship with Expressway indicate to me that McFarland was not an employee of Expressway, but rather an independent contractor. This is especially so in view of the relatively even balance existing among the other factors to be considered.

I would reverse the Board and hold that McFarland was not an employee of Expressway.